GRACE M. BRIGGS, Administratrix for CHARLES S. BRIGGS, Appellant,
v. KANSAS CITY JOINT STOCK LAND BANK.—40 S. W. (2d) 682.

Division One, June 24, 1931.

24

*Frank Doster, Frederick E. Whitten, Winger, Reeder, Barker* and *Gumbiner & Hazard* for appellant.

*E. F. Halstead* and *Harding, Murphy & Tucker* for respondent.

RAGLAND, J.—This is an action at law wherein the plaintiff seeks to recover the possession of a promissory note, together with damages. On the trial below a jury was waived and the cause tried to the court. The finding and judgment were for defendant. No findings of fact were requested, nor were any declarations of law asked or given. It follows that if the court's general finding for the defendant can be sustained on any legal theory applicable under the pleadings, the judgment must be affirmed. The evidence has been sifted, and will be summarized, with that general proposition in mind.

At the time of the transactions giving rise to this controversy the respondent's corporate name was the Liberty Joint Stock Land Bank, and its principal place of business was at Salina, Kansas. It subsequently moved its office to Kansas City, Missouri, and changed its name to the Kansas City Joint Stock Land Bank.

On June 1, 1919, one Watkins owned 360 acres of land in Douglas County, Kansas, the legal title to which stood in the name of one Conner. Through Conner, Watkins on that day obtained a loan of $36,000 on the land, which by the terms of the note and deed of trust executed in connection therewith was payable on an amortization plan in sixty-six semi-annual installments, the first installment being due on the first day of December, 1919, and a like sum due semi-annually on the first day of June and December of each year thereafter until all were paid. The deed of trust provided that the mortgagor's failure to pay any installment when due should cause the whole debt to mature at the option of the holder thereof without notice.

The installment of the mortgage debt maturing December 1, 1920, was not paid when due. Thereafter and pending the default, Watkins wrote respondent that he was negotiating a sale of the Conner land and would arrange for the purchaser to pay the past due installment. The respondent in the meantime had come into possession of information from which it concluded that the loan had been made on the basis of a gross over-valuation of the land, and that as a consequence the loan was excessive to the extent of $18,000. It thereupon demanded that the mortgage debt be correspondingly reduced as a condition precedent to its re-instatement or continuance as a subsisting loan after the default. Watkins finally advised respondent by letter that he had sold the land to B. A. Piekarsky, who lived in Chicago, and that the latter would pay the over-due installment and $18,000 in reduction of the debt as a whole.

On December 31, 1920, Piekarsky mailed respondent a check for $1270.50, the amount of the installment due December 1, 1920, with interest. This check was deposited to the credit of respondent in the Farmers National Bank at Salina, Kansas, on January 6, 1921. On January 7, 1921, respondent sent a telegram to Piekarsky, requesting him to wire at once the consideration and terms of his purchase of the Conner land. Piekarsky wired: "Purchase price fifty four thousand dollars, interest to your bank, taxes for next year, cash eighty-seven hundred and note for balance." On January 10, 1921, respondent telegraphed Piekarsky: "Wire us immediately whether you have agreed with Watkins to make reduction fifteen or eighteen thousand dollars our loan and if so when this reduction will be made. Answer at our expense." Walter Cravens, president of the respondent bank, was in Chicago at about the time of this exchange of telegrams and called upon Piekarsky, from whom he learned that nothing whatever had been said in the negotiations between him and Watkins about the reduction of the loan. At Kansas City, on his return from Chicago, Cravens called Watkins over the telephone and asked him to bring to Salina the abstract, deeds and all papers pertaining to the sale of the land to Piekarsky.

In response to Cravens's request, Watkins appeared at respondent's bank in Salina, Kansas, on January 12, 1921, with two deeds and a note. One of the deeds was from Conner to Watkins and the other from Watkins to Piekarsky. The note was the one given by Piekarsky to Watkins for the balance of the purchase money for the Conner land. At the conference then had, according to Cravens's testimony, an oral agreement was entered into between Cravens, representing the respondent, and Watkins. This agreement was to the effect that Watkins would forthwith, by way of additional security for the $36,000 loan, give respondent a mortgage on business property in Quenemo, Kansas, of sufficient value to secure $18,000 thereof—to be approved by respondent, and that Watkins would endorse and deliver to respondent the Piekarsky note to be held by it pending the furnishing of such additional security, the note to be returned to Watkins upon the giving of the additional security, but its proceeds to be applied as a payment on the $36,000 mortgage debt if the additional security was not given. Cravens further testified that pursuant to such understanding Watkins endorsed and delivered the note to him for respondent and then requested that he be given a receipt for the note and deeds which he turned over at the same time, and thereupon he, Cravens, dictated, signed and handed to Watkins a paper of which the following is a copy:

"The Liberty Joint Stock Land Bank.

Salina, Kansas.

January 12, 1921.

"Received of J. W. Watkins, warranty deed dated January 6, 1921, signed by himself and wife to B. A. Piekarsky, and also warranty deed from F. E. Conner to J. W. Watkins dated December 29, 1920, both deeds conveying the E ½ of the SE ¼ of Section 23, the W ½ of the SW ¼ of Section 24, the NW ¼ of Section 25 and the NE ¼ of the NE ¼ of Section 26, all in township 13, Range 20, East of the 6th P.M. Douglas County, Kansas. Also a note from B. A. Piekarsky to J. W. Watkins for $7,798, due January 15, 1921.

"It is understood and agreed that the Liberty Joint Stock Land Bank is to hold these papers pending the re-adjustment of the loan of $36,000, not past due, but it is agreed that the warranty deeds may be recorded at the direction of B. A. Piekarsky, the note of $7,798 to be returned to J. W. Watkins as soon as satisfactory additional security has been pledged.

"THE LIBERTY JOINT STOCK LAND BANK,

"By WALTER CRAVENS, Pres."

On the same day the above transaction occurred, January 12, 1921, the respondent applied as a payment on the $36,000 note the proceeds of the check mailed to it by Piekarsky on December 31, 1920.

On January 16, 1921, Watkins wrote Cravens as follows:

"I was called away hurriedly and did not get to make out application for additional security on the 360-acre farm loan. Will attend to that as soon as I return which will be in next ten days."

So far as the record shows Watkins after the writing of this letter wholly disappeared from the scene. The additional security was never given and no effort in that behalf was ever made.

On February 26, 1921, Piekarsky brought to the respondent's bank $5,941.02 and directed that respondent have $3,002 thereof applied to the payment and satisfaction of a certain judgment against Watkins which constituted a lien against the land, though junior to that of respondent's mortgage. Piekarsky further directed that the remainder of the money, $2,939.02, be applied as a payment on his $7,798 note to Watkins. Both applications were made in accordance with Piekarsky's directions, but the whole amount, $5,941.02, was erroneously credited on the note. It does not appear from the evidence that Piekarsky ever made any further payment on the note. The petition alleges that he is now insolvent and unable to pay the balance due.

The lands covered by the $36,000 mortgage were sold at a foreclosure sale sometime in the early part of 1925, pursuant to a decree rendered by the United States District Court of the District of Kansas; at such sale, a price sufficient to satisfy the mortgage debt, was not realized, and a deficiency judgment was rendered. There is some question as to whether the district court had, jurisdiction of the foreclosure action; if it was without jurisdiction, the whole of the mortgage debt, with the exception of the first three installments, is due and unpaid.

On the 18th day of August, 1921, Briggs notified respondent by letter that Watkins, by a writing dated "this — day of May, 1921," had assigned to him all of his, Watkins', "interest and claim" in and to the Piekarsky note. Later appellant mailed respondent a copy of the assignment and an order by Watkins to deliver the note to his said assignee. The refusal of the respondent to comply with the order resulted ultimately in the bringing of this action.

The foregoing is a summary of the evidence, and the inferences which may be legitimately drawn therefrom, most favorable to defendant. Such a summary suffices for an understanding of the only question which we are called upon to determine, namely: Does the evidence, upon any view which may be reasonably taken of it, warrant the finding and judgment of the trial court?

The petition in general outline follows the conventional form of such a pleading in an action to recover the possession of specific personal property. It alleges in addition, however, that the possession of the property sought to be recovered, the Piekarsky note,

was wrongfully obtained by means of false representations, in this, that Cravens represented to Watkins that through the default in the payment of the interest and installment of principal, which occurred December 1, 1920, the whole debt had become due and the $36,000 mortgage was then subject to foreclosure. Whereas, in truth and in fact said interest and installment of principal, without Watkins' knowledge, had been paid on January 6, 1921, and such payment had been accepted by the mortgagee,—by reason of all of which the default had been cured and the mortgage fully re-instated.

The answer contained an admission that defendant (respondent) is a corporation, and that it is the owner and holder of the Piekarsky note, "as set forth in the plaintiff's petition;" a plea of *res adjudicata;* and a general denial couched in this form: "Defendant denies each and every allegation therein contained not herein specifically admitted."

Appellant's principal contentions are: First, That the possession of the note in question was obtained by means of false pretenses, and, impliedly, that there was no consideration to support the contract of pledge; and, second, that the pledge agreement is unenforceable because of the vagueness and indefiniteness of its terms, which cannot be explained or added to by parol proof.

I. Following the default in the payment of the installment of the mortgage debt which fell due December 1, 1920, Watkins was fully advised by the correspondence which took place between him and respondent during the month of December that the mortgage would not be re-instated, but would be foreclosed, unless the debt was reduced by one-half. He in the meantime was exerting his utmost effort to get what he could out of the land and shift to the shoulders of another the burden of his mortgage obligations. Fearful that he could not succeed in this before a foreclosure proceeding was commenced, on December 30, 1920, he induced Piekarsky, with whom he was negotiating a sale, to "advance" the amount required to pay the past due interest and installment of principal. On the day following, December 31, Piekarsky mailed to respondent a check covering the amount. Respondent made no acknowledgment of the receipt of the check, but held it until January 6 and then deposited it for collection in the Farmers National Bank at Salina. Watkins had assured respondent that in any contract for the sale of the land concluded with Piekarsky the latter would be obligated to immediately reduce the mortgage debt to the extent of $18,000. After waiting several days for further assurances as to this, respondent telegraphed Piekarsky to wire it the terms of his contract with

Watkins. The answer not disclosing whether Piekarsky had agreed to reduce the mortgage debt, respondent, on January 10, requested, by wire, the specific information as to whether Piekarsky had obligated himself to pay $15,000 or $18,000 in reduction of the mortgage debt. After learning definitely that he had not, respondent called Watkins by 'phone and requested him to come to its bank with all the papers pertaining to his sale to Piekarsky. Watkins came on January 12th, and the transaction took place as heretofore detailed.

Cravens testified positively that Piekarsky's check was not accepted by respondent as a payment of the installment as to which there had been a default, nor were the proceeds thereof so appropriated by it, until after Watkins had pledged the Piekarsky note as additional security. The only countervailing evidence is that showing the check was deposited in bank for collection on January 6, and that evidence under all circumstances is by no means conclusive. The trial court was, therefore, fully warranted in holding that the mortgage, at the time of the pledging of the Piekarsky note as additional security, was subject to foreclosure, and that no misrepresentations in that respect had been made.

II. The contention under this head assumes that the parties to the pledge agreement intended that the writing, termed a receipt, should constitute the sole memorial and repository of its terms. The court on the contrary could well have found that the parties entertained no thought of reducing their contract to writing; that the writing which was given by respondent following the making of the agreement was intended merely as a receipt, in which was added the general conditions, referable to the contract which had just been entered into, upon which the note would be returned to Watkins. [1 Greenleaf on Evidence (16 Ed.), secs. 305a-305f.] But if it be assumed that the parties intended the writing to be the sole memorial of the terms of their contract and that the contract as so evidenced is void for uncertainty—wholly meaningless, how is appellant's position aided thereby? Concededly the note was endorsed and delivered to respondent by Watkins. His acts in so doing, prima-facie, transferred to respondent the absolute title to the note. In this situation appellant, and not respondent, seeks to have enforced the alleged void executory contract. Appellant, who stands in his assignor's shoes, cannot appropriate one term of the alleged contract, namely, "the note of $7,798 to be returned to J. W. Watkins," and repudiate as meaningless the modifying condition, "as soon as satisfactory additional security has been pledged." The provisions are not severable; the contract must be enforced as a whole, or not at all. Confronted with this situation the appellant himself showed by

parol proof, not only that the note was merely pledged as additional security for the mortgage debt, but all of the terms and conditions embodied in the pledge agreement as well. He can not now stand on so much of the contract established by his proof as he deems advantageous to himself and at the same time repudiate the remainder.

It appearing that Watkins pledged the note in controversy as additional security for the $36,000 mortgage debt, to be held by respondent as such until additional security in lieu of it was pledged, that no such additional security was ever furnished or offered, and that the mortgage debt has never been fully discharged, but is still subsisting, neither Watkins nor his assignee is entitled to the possession of the note.

III. 1. A considerable portion of appellant's brief and printed argument are devoted to the alleged violation by respondent of the trust reposed in it by the pledge agreement, in paying out of moneys collected by it on the note a judgment against Watkins, the lien of which was inferior to that of its mortgage. But according to a view of which the proof is susceptible no money collected on the note was ever so used. When Piekarsky brought to respondent's bank $5,941.02, he directed respondent to apply $3,002 to the payment of the judgment against Watkins. He had a right to give this direction, and respondent was bound to follow it.

2. In his reply brief in this court appellant for the first time questioned the sufficiency of the answer as a general denial. This defect in defendant's pleading was possibly covered in one of appellant's assignments of error: "The court erred in rendering judgment against appellant and in favor of respondent." But as it was nowhere mentioned under the head of Points and Authorities, nor referred to in the printed argument which followed, it could well be treated as having been abandoned. The point, however, will be disposed of on its merits—in accordance with a long line of decisions of this court. No motion for judgment on the pleadings was filed; none in arrest of judgment; appellant did not in any way question the sufficiency of the pleading as a general denial while the cause was pending in the trial court, but on the contrary at all times treated it as adequate. The trial below proceeded on that theory. Appellant is estopped to raise the question in this court. The situation presented by the record in this case is in no way comparable to that shown in the case of James v. Bailey-Reynolds & Co., 30 S. W. (2d) 119, cited by appellant.

The judgment of the circuit court is affirmed. All concur.